# Exhibit A

Exhibit A            Exhibit A            Exhibit A

Electronically Filed
11/14/2019 10:00 AM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Elia Rocha, Deputy Clerk

Eric S. Rossman, ISB #4573
erossman@rossmanlaw.com
Erica S. Phillips, ISB #6009
ephillips@rossmanlaw.com
Matthew G. Gunn, ISB #8763
mgunn@rossmanlaw.com
ROSSMAN LAW GROUP, PLLC
350 N 9th St, Ste 500
Boise, Idaho 83702
Telephone: (208) 331-2030
Facsimile: (208) 947-2424
*iCourt efiling only!:* rlg@rossmanlaw.com

Attorneys for Plaintiff

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| PETER VIDMAR, an individual, | ) | CASE NO. CV01-19-20722 |
|---|---|---|
| Plaintiff, | ) | |
| -vs- | ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| IDAHO POWER COMPANY, an Idaho corporation, | ) | |
| Defendant. | ) | |

COMES NOW Peter Vidmar, the above-named Plaintiff, and for cause of action against Defendant Idaho Power Company, hereby COMPLAINS AND ALLEGES as follows:

## PARTIES

1. Plaintiff Peter Vidmar (hereinafter "Mr. Vidmar") at all times herein mentioned has been, and presently is, a resident of Ada County, Idaho.

2. Defendant Idaho Power Company ("Idaho Power") at all times herein mentioned has been, and presently is, an Idaho corporation.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

RECEIVED NOV 14 2019 BY: PH

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to Idaho Code § 1-705.

4. Venue is appropriate pursuant to Idaho Code § 5-404 because this cause of action arose within Ada County and the principal place of business of Idaho Power is located within Ada County.

## GENERAL ALLEGATIONS

5. Peter Vidmar was hired by Idaho Power Company ("Idaho Power") in 1993 on a contract basis, becoming a full-time employee thereof in 1997.

6. Over the first 25 years of his employment with Idaho Power, Mr. Vidmar became a vested and highly engaged employee. Mr. Vidmar consistently received exemplary performance reviews, raises, and bonuses throughout his distinguished Idaho Power career.

7. In mid-October of 2018, Mark Kolowith, a senior engineer in the stream gauging group in which Mr. Vidmar worked, instructed Mr. Vidmar to go with Dan Sullivan and Rick Thometz (Water Resource Specialists in the Stream Gauging Group) to the Snake River below Hells Canyon to install a new gauge.

8. Although Mr. Kolowith had been the lead on this project for months, he handed it off to Mr. Vidmar two weeks prior to the planned installation. Mr. Kolowith provided the team with a few photographs of the site, including a marked-up photo of the specific location that the U.S. Forest Service approved locating the pole to hold the instrument panel. The team was also provided guidance on how deep the orifice end had to be in the water in order to stay submerged at minimum flows out of Hells Canyon Dam.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

9. The team traveled to the Snake River below Hells Canyon and followed Mr. Kolowith's plan for the installation of the new gauge. During the trip, Mr. Thometz asked Mr. Vidmar a question about the installation related to safety.

10. Upon return from the trip there was a streamflow gauging team meeting which included a standard safety discussion. During the meeting Mr. Thometz did not specify a safety concern about the Hells Canyon gauge install trip nor did he state that a "stop work" request was made by himself or any team member at any point in time during the trip.

11. On November 30, 2018 Mr. Conner met with Mr. Vidmar and told him that he was being moved from the stream gauging group to the river engineering group and that Mr. Vidmar had until December 7th to move into a new cubicle that was isolated from both groups.

12. Mr. Conner told Mr. Vidmar that these changes were being made because: (1) Mr. Rundberg had expressed frustration with Mr. Vidmar's argumentativeness during a meeting on November 28; and (2) Mr. Conner had received concerns about Mr. Vidmar directing another team member's work regarding significant problems with two gauges while Mr. Conner was on vacation, although it had been agreed in a prior group discussion that all upgrades at the gauges would be delayed until Spring 2019.

13. Mr. Vidmar apologized to Mr. Conner for forgetting the earlier group consensus on delaying the gauge upgrades as he was experiencing difficulty with his memory and told Mr. Conner he did not agree with Mr. Rundberg's accusation regarding the November 28 meeting. Based on the difficulties he was experiencing with his memory, Mr. Vidmar called to make an appointment with his doctor that same day.

14. On December 14, 2018, a formal safety investigation regarding the Hells Canyon gauge installation began. Mr. Vidmar met with Jim Duke (Senior Manager of Safety Department) and Scott Taylor (Safety Professional for Power Production).

15. Mr. Vidmar informed Mr. Taylor and Mr. Duke that he had trouble remembering specific details and that his memory of the trip, completed two months ago, was quite fuzzy. Although Mr. Vidmar tried his best to avoid getting things confused, he struggled with his memory and got bits and pieces of individual conversations mixed up. During the safety investigation Mr. Vidmar mentioned several times that he was having difficulty remembering specific details regarding the Hells Canyon trip from two months ago.

16. On January 8, 2019, Mr. Vidmar was summoned to a meeting with HR and an outside lawyer, Pam Howland, who was to conduct a code of conduct violation regarding Mr. Vidmar's participation in the Hells Canyon safety investigation.

17. In response to several of Ms. Howland's questions, Mr. Vidmar stated: "I can't remember." Mr. Vidmar told Ms. Howland that it was "getting harder to remember details from several months ago. Sometimes I can't even remember where I parked my truck in the morning."

18. At the end of the interview Ms. Howland gave Mr. Vidmar her card and asked him to contact her if he thought of anything else of which she should be aware. Mr. Vidmar was then placed on administrative leave.

19. By running over events repeatedly in his mind Mr. Vidmar was able to remember additional details, and during his administrative leave he contacted Ms. Howland on January 14th and again on January 15th to inform her of events he recalled.

20. On January 16, 2019 Mr. Vidmar met with Steve Atkins, an employee human resources representative. Mr. Vidmar relayed to Mr. Atkins his concerns regarding his memory

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

and that he felt the code of conduct investigation seemed to be more of a memory test than about any integrity issue.

21. Mr. Vidmar met with Jaclyn McCall (HR Professional) and Tom Harvey on January 24, 2019, and he was informed that his employment was being terminated for two reasons: (1) a safety concern related to the Hells Canyon trip, and (2) Mr. Vidmar's compromised integrity.

22. Mr. Vidmar again stated to Ms. McCall and Mr. Harvey that he was having more and more difficulties with his memory. Mr. Vidmar stated during that meeting that he felt his "memory had been compromised" and that he was having difficulty remembering details of events that occurred several months ago. Mr. Vidmar reiterated that he felt the Hells Canyon investigation process was more of a memory test than a test of his integrity.

## COUNT ONE

### *Disability Discrimination in Violation of the Americans with Disabilities Act*

23. Mr. Vidmar hereby realleges the allegations contained in paragraphs 1 through 22 as set forth above and incorporates the same herein by reference.

24. Mr. Vidmar is a qualified individual within the meaning of the Americans with Disabilities Act based on his short-term memory issues and because he was able to perform the essential functions of his job at Idaho Power with or without a reasonable accommodation.

25. Being aware that Mr. Vidmar was suffering from short-term memory issues, Idaho Power had a duty to investigate such disability and begin the interactive reasonable accommodation process by discussing with Mr. Vidmar how his short-term memory issues may have affected his performance.

26. The intentional and deliberately indifferent actions of Idaho Power in failing to investigate Mr. Vidmar's disability and engage in an interactive process to determine whether his

disability could be reasonably accommodated and terminating Mr. Vidmar's employment because of his disability is in violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, and the Americans with Disabilities Act, which prohibits discrimination based on disability.

27. As a direct and proximate result of Idaho Power's intentional and deliberately indifferent violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, and the Americans with Disabilities Act, Mr. Vidmar is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount exceeding $10,000.00 to be determined with specificity at trial.

28. Mr. Vidmar is entitled to recover his attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 12117(a), I.R.C.P. 54, and any other applicable provisions of Idaho law.

29. Mr. Vidmar is entitled to recover punitive damages as permitted by 42 U.S.C. § 12117(a).

## COUNT TWO

### *Violation of the Family Medical Leave Act*

30. Mr. Vidmar hereby reiterates the allegations set forth in paragraphs 1 through 29 as set forth above and incorporates the same herein by reference.

31. Idaho Power is an employer within the meaning of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(a)(A).

32. Upon information and belief, Idaho Power employs at least fifty (50) employees at or within seventy-five (75) miles of the worksite at which Mr. Vidmar worked.

33. Because Mr. Vidmar worked for Idaho Power for more than 12 months and worked more than 1,250 hours during the 12-month period immediately preceding his termination, Mr. Vidmar was a "qualified employee" within the meaning of the provisions of the FMLA.

34. Idaho Power's actions in failing to investigate and discuss with Mr. Vidmar his need to take FMLA leave based on his memory issues constitutes conduct in violation of the FMLA, 29 U.S.C. § 2615.

35. As a direct and proximate result of Idaho Power's violation of the FMLA, Mr. Vidmar is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount exceeding $10,000.00 to be determined with specificity at trial.

36. Idaho Power's violation of the FMLA occurred without good faith and/or without reasonable grounds for believing that such was not a violation of the FMLA; and, therefore, Mr. Vidmar is entitled to liquidated damages pursuant to 29 U.S.C. § 2617.

37. Mr. Vidmar is further entitled to an award of attorney fees for prosecuting this action pursuant to 29 U.S.C. § 2617, I.R.C.P. 54, and any other applicable provisions of Idaho law.

## COUNT THREE

### *Negligent and/or Intentional Infliction of Emotional Distress*

38. Mr. Vidmar hereby reiterates the allegations set forth in Paragraphs 1 through 37 as set forth above and incorporates the same herein by reference.

39. By its actions detailed herein above, Defendant has negligently and/or intentionally caused Mr. Vidmar to suffer extreme mental anguish and emotional distress which distress has resulted in physical manifestations including anxiety, insomnia, and depression.

40. As a result of Defendant's negligent and/or intentional infliction of severe emotional distress, Mr. Vidmar has suffered damages in an amount exceeding $10,000, the exact amount to be proven with specificity at trial.

41. Mr. Vidmar is entitled to recover his attorney fees and costs incurred in pursuing this matter pursuant to Idaho Code §§ 12-120, 12-121, I.R.C.P. 54, and any other applicable provisions of Idaho law.

42. Mr. Vidmar hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment, Order and Decree of this Court as follows:

1. For judgment of the court awarding Plaintiff damages in excess of $10,000.00, for both economic and non-economic damages, incurred as a result of Defendant's wrongful termination of Plaintiff in violation of the Idaho Human Rights Act and the Americans with Disabilities Act.

2. For prejudgment interest on all damages recovered at the rate set forth within Idaho Code § 28-22-104.

3. For Plaintiff's reasonable attorney fees and costs incurred in prosecuting this action; and

4. For such other and further relief as the court deems just and necessary.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Idaho Rule of Civil Procedure 38(b).

DATED this 14 day of November, 2019.

ROSSMAN LAW GROUP, PLLC

By: _____
Matthew G. Gunn
Attorneys for Plaintiff

Z:\Work\V\Vidmar, Peter\Pleadings\Complaint.docx

COMPLAINT AND DEMAND FOR JURY TRIAL - 9